HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER Assistant City Attorney (SBN 229424)
EMERSON H. KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, Room 675, City Hall East
Los Angeles, California 90012
Telephone No.: (213) 526-7336
Email: emerson.kim@lacity.org

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK GERRITSEN, et al. <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al. <br><br> Defendants. | No. 2:25-cv-08760-RGK-KS <br><br> **Hon. R. Gary Klausner** <br> **United States District Judge** <br><br> Action filed:  September 4, 2025 <br><br> **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. RELEVANT BACKGROUND .................................................................... 1

III. LEGAL STANDARD ................................................................................ 3

IV. ARGUMENT .............................................................................................. 3

    A. The *Winter* Factors Weigh Against the Issuance of a Preliminary Injunction. ....................................................................................................3

        1.    Plaintiff Will Not Succeed on the Merits.......................................3

            a)    The Olvera Street Cross Does Not Violate the Establishment Clause as Its Purpose Is Secular—to Preserve History and Culture....................................................4

            b)    For the Same Reasons, the Kiosko Nativity Scene (Crèche) Does Not Violate the Establishment Clause, Whether Viewed under *American Legion* or the *Lemon* Test....................................................................................8

        2.    There Is No Threat of Imminent, Irreparable Harm.. ...................12

        3.    The Balance of Equities and Public Interest Support Denying Injunctive Relief...........................................................................13

V. CONCLUSION........................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

Cases

*American Legion v. American Humanist Association*,
588 U.S. 29 (2019) ................................................................................................... passim

*Ass'n v. Maxwell-Jolly*,
563 F.3d 847 (9th Cir. 2009) ............................................................................... 12

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................................. 3

*Env't Prot. Info. Ctr. v. Carlson*,
968 F.3d 985 (9th Cir. 2020) ................................................................................. 3

*Garcia v. Google, Inc.*,
786 F.3d 733, (9th Cir. 2015) ............................................................................. 12

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ............................................................................... 3

*L.A. Mem'l Coliseum Com. v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980) ............................................................................. 13

*Lynch v. Donnelly*,
465 U.S. (1984) ................................................................................................. 9, 10, 11

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................. 13

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
762 F.2d 1374 (9th Cir. 1985) ............................................................................. 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ............................................................................. 12

*Roman v. Wolf*,
977 F.3d 935 (9th Cir. 2020) ............................................................................. 13

*Sampson v. Murray*,
415 U.S. 61 (1974) ............................................................................................. 12

*Sierra Forest Legacy v. Rey*,
   577 F.3d 1015 (9th Cir. 2009) ................................................................. 3

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) ................................................................. 3

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ................................................................................. 3

*Winter v. NRDC*,
   555 U.S. 7 (2008) ..................................................................................... 3

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) ............................................................. 12

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Jack Gerritsen ("Plaintiff") moves to enjoin Defendants City of Los Angeles (the "City") and Domenika Lynch (together with the City, "Defendants") from displaying a wooden Latin cross and an annual nativity scene located on Olvera Street in the El Pueblo de Los Angeles Historical Monument park, contending that both violate the Establishment Clause of the First Amendment.[1]

Plaintiff's motion fails for several reasons. He fails to discharge his heavy burden of making a colorable claim and does not provide any substantive evidence that his First Amendment rights have been infringed, relying on his scant declaration. Nor could he, as well-established Supreme Court precedent makes clear that both the nearly century-old cross and nativity scene have a secular purpose rooted in preserving the history and culture of El Pueblo, making it all but settled that he will not succeed on the merits. He cannot reasonably claim that he is likely to suffer imminent and irreparable harm in the absence of injunctive relief, as he has delayed filing this motion given that, by his own admission, the offending event(s) occurred in 2024, if not earlier. And based on the above, the balance of equities and public interest does not weigh in favor of injunctive relief.

As such, Defendants respectfully request that the Court deny his motion.

### II. RELEVANT BACKGROUND

The El Pueblo de Los Angeles Historical Monument is 44-acre public, City-owned historic "park" that marks the birthplace of the City of Los Angeles, where forty-four settlers of Native American, African, and European heritage journeyed more than one-thousand miles from present-day northern Mexico and established a farming community in September 4, 1781. Wikipedia, *El Pueblo de Los Angeles Historical Monument*, https://en.wikipedia.org/wiki/El_Pueblo_de_Los_%C3%81ngeles_Historical_Monument (last visited Mar. 11, 2026); El Pueblo de Los Angeles, *About Us*, https://elpueblo.

---

[1] Though the action is brought by two individuals, Plaintiffs Gerritsen and Ramey, the motion seeking an injunction is limited to Plaintiff Gerritsen, as the allegations in the Complaint and the declaration in support of the motion are tied to him only.

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

lacity.gov/about-us (last visited Mar. 11, 2026).

To commemorate this occasion, a wooden cross was erected on Olvera Street ("Olvera Street Cross") in 1929 on the City's 148th birthday. The Historical Market Database, *Olvera Street Cross*, https://www.hmdb.org/m.asp?m=162936 (last visited Mar. 11, 2026).  Inscribed on the cross are "El Pueblo de la Reyna de Los Angeles" (or The Town of the Queen of Angeles, which is the historical variation of the full original name for Los Angeles—El Pueblo de Nuestra Senora la Reina de los Angeles de Porciuncula or The Town of Our Lady the Queen of the Angels of Porciuncula), "Felipe de Neve" (the founder of Los Angeles), and "September Fourth 1781" (the date the city was founded). *Id.*  The Huntington's digital library describes the cross as "the commemorative wooden cross monument for Felipe de Neve[,] a former governor of Alta California and founder of Los Angeles . . . ." The Huntington Digital Library, *Old Cross at Entrance of Olvera St. Los Angeles, Cal.*, https://hdl.huntington.org/digital/collection/p15150coll2/id/17779 (last visited Mar. 11, 2026).

Every year during the Christmas season, a nativity scene, or crèche, is set up at the Kiosko El Pueblo ("Kiosko Nativity Scene"), a central gazebo located in the Plaza of El Pueblo de Los Angeles Historical Monument, which is near the Olvera Street Cross.  The crèche plays a key part in the celebratory tradition of Las Posadas, which is a procession that takes place on Olvera Street that commemorates the journey of Joseph and Mary from Nazareth to Bethlehem and their search for shelter in preparation for the birth of Jesus. Olvera-Street.com, *Las Posadas*, https://www.olvera-street.com/las-posadas (last visited Mar. 11, 2026).  This tradition began in the 16th century and is celebrated in Mexico and other Latin American countries. *Id.*  And while the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/ las-posadas-olvera-street (last visited Mar. 11, 2026).  This tradition has been a part of Olvera Street since its founding. *Id.*

*///*

2

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## III.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008).  Under *Winter*, a plaintiff "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009).

In considering the likelihood of success on the merits, the district court is not strictly bound by the rules of evidence, as the "preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

"[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed . . . at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011).

## IV.   ARGUMENT

### A.   The *Winter* Factors Weigh Against the Issuance of a Preliminary Injunction.

#### 1.   Plaintiff Will Not Succeed on the Merits.

The first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).  Thus, a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

The first *Winter* factor weighs against Plaintiff, as he is unable to make a "clear

3

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

showing" that he will succeed on any of his claims.

> **a)** **The Olvera Street Cross Does Not Violate the Establishment Clause as Its Purpose Is Secular—to Preserve History and Culture.**

Plaintiff seeks to enjoin displaying the Olvera Street Cross, contending that its primary purpose is one of religious endorsement by the City and therefore violative of the Establishment Clause. *See* Pl.'s Mot., 6:16-19.  However, the facts here align with *American Legion v. American Humanist Association*, 588 U.S. 29 (2019), which dealt with the category of "religious references or imagery in public monuments, symbols, mottos, displays, and ceremonies" under the Establishment Clause. *See id.* at 51 n.16 (2019).

In *American Legion*, the Supreme Court reversed the judgment of the Court of Appeals for the Fourth Circuit and held that a 32-foot tall, century-old cross monument on public land did not violate the Establishment Clause, as it had taken on secular meaning with the passage of time.[2] *American Legion*, 588 U.S. at 63-64.

The case centered on a Latin cross constructed in 1925 in the town of Bladensburg, Maryland (the "Bladensburg Cross"), which sat on public land and required public funds to maintain it. *Id.* at 36-38.  At the base of the 32-foot tall cross, a bronze dedication plaque at the base of the monument listed the names of 49 local men, both Black and White, who had lost their lives in World War I ("WWI"). *Id.* at 43-44.  Nearly 90 years after the Bladensburg Cross was erected, the petitioner (American Humanist Association ("AHA")) sued, seeking, in part, injunctive relief resulting in its removal or demolition. *Id.* at 45-46. The District Court granted summary judgment against AHA, holding that the Bladensburg Cross satisfied the three-pronged *Lemon* test. *Id.* at 46.  The Fourth Circuit reversed. *Id.* at 48.

In rendering its decision, the Supreme Court wasted no time in rejecting the *Lemon* test at the outset. *See id.* at 48-49 ("If the *Lemon* Court thought that its test would provide

---

[2] The Supreme Court also rejected the *Lemon* test, which Plaintiff relies on in his Motion. *American Legion*, 588 U.S. at 50-51.

4

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

a framework for all future Establishment Clause decisions, its expectation has not been met. In many cases, this Court has either expressly declined to apply the test or has simply ignored it.").

It noted "at least four reasons" why the *Lemon* test was problematic when applied to cases involving "the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations," stating that "these considerations counsel against" using the *Lemon* test "and toward application of a presumption of constitutionality for longstanding monuments, symbols, and practices." *American Legion*, 588 U.S. 29, 51-52 (2019) (citation omitted). First, "[t]hese cases often concern monuments, symbols, or practices that were first established long ago," and thus, "identifying their original purpose or purposes are difficult." *Id.* at 52. Thus, "it would be inappropriate for courts to compel their removal or termination based on supposition." *Id.* Second, "as time goes by, the purposes associated with an established monument, symbol, or practice often multiply." *Id.* at 53. The Supreme Court pointed to the Ten Commandments monuments as an example, where "[t]hey have historical significance as one of the foundations of our legal system, and for largely that reason, they are depicted in the marble frieze in our courtroom and in other prominent public buildings in our Nation's capital." *Id.* Simply put, "[a]s our society becomes more and more religiously diverse, a community may preserve such monuments, symbols, and practices for the sake of their historical significance or their place in a common cultural heritage." *Id.* at 54. Third, "just as the purpose for maintaining a monument, symbol, or practice may evolve, the message conveyed may change over time." *Id.* at 54 (internal quotation marks and citation omitted). Among several examples, the Supreme Court pointed to the "many cities and towns across the United States that bear religious names," noting that "[r]eligion undoubtedly motivated those who named [them] . . . [y]et few would argue that this history requires that these names be erased from the map." *Id.* at 55. It went so far as to state that "[f]amiliarity itself can become a reason for preservation." *Id.* at 56. Fourth, "when time's passage imbues a religiously expressive monument, symbol, or practice with this kind of familiarity and historical significance,

5

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

removing it may no longer appear neutral, especially to the local community for which it has taken on particular meaning." *Id.* at 56.  "A government that roams the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine will strike many as aggressively hostile to religion." *Id.* at 56.

The Supreme Court then assessed the Bladensburg Cross, underscoring its purpose and intent as a monument of the sacrifice of American soldiers killed in WWI despite being a religious symbol: "That the cross originated as a Christian symbol and retains that meaning in many contexts does not change the fact that the symbol took on an added secular meaning when used in World War I memorials." *Id.* at 63.  Furthermore, there was no evidence of discriminatory intent in the selection of the design or the decision to maintain it.  The Supreme Court noted that "[t]he monument would not serve that role if its design had deliberately disrespected area soldiers who perished in World War I," such as deliberately leaving off the names of Jewish soldiers (or including them against the wishes of their families) or the exclusion of Black soldiers, as the monument was erected "during a period when the country was experiencing heightened racial and religious animosity" where "[m]embership of the Ku Klux Klan . . . was at its height." *Id.* at 64-65.  The Supreme Court concluded that "[t]he cross is undoubtedly a Christian symbol, but that fact should not blind us to everything else that the Bladensburg Cross has come to represent." *Id.* at 66.

Here, the facts supporting a secular purpose align with *American Legion*.  The Olvera Street Cross was erected to honor the City's founding, as opposed to being an endorsement of Christianity.  A nearby marker explains its secular purpose: "The first Olvera Street cross was carved by Mrs. Florence Walker in 1929 to honor the city's 148th birthday." The Historical Market Database, *Olvera Street Cross*, https://www.hmdb.org/m.asp?m=162936 (last visited Mar. 11, 2026).  The Olvera Street Cross is inscribed with "El Pueblo de la Reyna de Los Angeles" (or The Town of the Queen of Angeles, which is the historical variation of the full original name for Los Angeles—El Pueblo de Nuestra Senora la Reina de los Angeles de Porciuncula or The Town of Our Lady the Queen of the

Angels of Porciuncula), "Felipe de Neve" (the founder of Los Angeles), and "September Fourth 1781" (the date the city was founded). *Id.*  Its secular purpose is further corroborated by The Huntington's digital library, which describes the cross as "the commemorative wooden cross monument for Felipe de Neve[,] a former governor of Alta California and founder of Los Angeles . . . ." The Huntington Digital Library, *Old Cross at Entrance of Olvera St. Los Angeles, Cal.*, https://hdl.huntington.org/digital/collection/p15150coll2/id/17779 (last visited Mar. 11, 2026).  There is no mention of a religious purpose being espoused.  Given that "Los Angeles" is indisputably religious in origin, a Latin cross monument to commemorate its founding is fitting for this secular purpose.  And no evidence of discriminatory intent exists here.  There is no indication that a cross was chosen to exclude other religious or racial groups—then or now.  In fact, the history of the City indicates a diverse group of forty-four settlers of Native American, African, and European heritage had founded it.

Even if the above evidence of the Olvera Street Cross's original, secular purpose were set aside, the bare reasoning set forth in *American Legion* (i.e., the noted shortcomings of the *Lemon* test) still points to preservation.  First, given that the monument was established nearly a century ago, it would be inappropriate for the Court to compel its removal based on supposition—that because the monument is a Latin cross its purpose was religious.  Second, even if true, the purposes associated with it have undoubtedly multiplied, specifically that the Olvera Street Cross must be preserved due to its historical significance and its place in cultural heritage as commemorating the birthplace of the city.  Third, just as the purpose for maintaining a monument may evolve, the message conveyed has changed over time.  The Supreme Court observed in *American Legion* that "few would say that the State of California is attempting to convey a religious message by retaining the names given to many of the State's cities by their original Spanish settlers—San Diego, Los Angeles, Santa Barbara, San Jose, San Francisco, etc." *See American Legion*, 588 U.S. at 60.  Likewise, few would say that the City is attempting to convey a religious message by maintaining the Olvera Street Cross.  "Familiarity itself can become a reason

7

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

for preservation." *Id.* at 56.  Fourth, when time's passage imbues a religiously expressive monument with this kind of familiarity or historical significance, removing it will no longer appear neutral, especially to the local community for which it has taken on particular meaning.  Thus, given that the Olvera Street Cross has become a prominent community landmark, "its removal or radical alteration at this date would be seen by many not as a neutral act but as the manifestation of 'a hostility toward religion that has no place in our Establishment Clause traditions.'" *Id.* at 36 (citation omitted).

As such, Plaintiff will not succeed on the merits in claiming that the Olvera Street Cross violates the Establishment Clause.

> **b)** **For the Same Reasons, the Kiosko Nativity Scene (Crèche) Does Not Violate the Establishment Clause, Whether Viewed under *American Legion* or the *Lemon* Test.**

Plaintiff also moves to enjoin the City from displaying the annual Kiosko Nativity Scene.  But just as with the Olvera Street Cross, the facts and Supreme Court case law unequivocally shows that the crèche is constitutional and does not violate the Establishment Clause.

The same analysis under *American Legion* confirms this.  As stated above, the crèche is tied to the Las Posadas celebration.  Both have longstanding roots, and it would be inappropriate for the Court to compel its removal based on supposition as to its original purpose.  It has been on display since early days of Los Angeles, and Las Posadas has been a part of Olvera Street since its founding in 1930. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026).  Its purpose and message are to celebrate and commemorate centuries-old traditions, meaning the crèche should be preserved for the sake of its historical significance and cultural heritage.  Las Posadas commemorates the journey of Joseph and Mary from Nazareth to Bethlehem and their search for shelter in preparation for the birth of Jesus, and it is a tradition that began in the 16th century and is celebrated in Mexico and other Latin American countries. Olvera-Street.com, *Las Posadas*, https://www.olvera-

8

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

street.com/las-posadas (last visited Mar. 11, 2026).  While the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate. El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026). Thus, when viewing the crèche and the event together, its purpose is to celebrate and commemorate Mexican/Spanish traditions that have existed since the City's founding. And "[f]amiliarity itself can become a reason for preservation." *American Legion*, 588 U.S. at 56.  Ultimately, given the passage of time, removing the crèche (or preventing its display) will no longer appear neutral, especially to the Los Angeles community for which it has taken on a particular meaning.

Even if the Court were to the apply the rejected *Lemon* test that Plaintiff relies on, *Lynch v. Donnelly*, 465 U.S. 688 (1984), confirms that the Kiosko Nativity Scene still does not violate the Establishment Clause.  In that case, the Supreme Court reversed the district court's decision to permanently enjoin the city from including a crèche in its Christmas display, which the Court of Appeals of the First Circuit had affirmed.

In *Lynch*, each year, in cooperation with the downtown retail merchants' association, the City of Pawtucket, Rhode Island, had erected a Christmas display as part of its observance of the Christmas holiday. *Id.* at 671.  Though the display was situated in a park owned by a nonprofit organization, the Supreme Court noted that it was "essentially like those to be found in hundreds of towns or cities across the Nation—often on public grounds—during the Christmas season." *Id.*  The city-owned crèche had been displayed for 40 or more years, consisting of traditional figures, including the Infant Jesus, Mary and Joseph, angels, shepherds, kings, and animals. *Id.*  In addition, the display included other decorations associated with Christmas, including, among other things, a Santa Claus house, reindeer pulling Santa's sleigh, a Christmas tree, carolers, colored lights, and a large banner reading "SEASONS GREETINGS." *Id.*

Residents, an affiliate of the American Civil Liberties Union, and the affiliate's members brought suit challenging the inclusion of the crèche. *Id.*  The district court held

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

that the city's inclusion of the crèche violated the Establishment Clause by endorsing and promulgating Christian beliefs and appearing to officially sponsor the religion. *Id.* at 672. The district court did acknowledge the absence of administrative entanglement, but it nevertheless found that excessive entanglement had been fostered as a result of the political divisiveness by including the crèche. *Id.*  The Court of Appeals for the First Circuit affirmed.

At the outset of its analysis, the Supreme Court recognized that a "total separation" of church and state was "not possible in the absolute sense" and "[n]or d[id] the Constitution require complete separation; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Id.* at 672-673.  The Supreme Court then applied the *Lemon* test (i.e., (1) whether the challenged conduct has a secular purpose, (2) whether its principal or primary effect is to advance or inhibit religion, and (3) whether it creates an excessive entanglement of government with religion or through divisive political potential), though emphasized its "unwillingness to be confined to any single test or criterion in this sensitive area." *Id.* at 679.

First, the Supreme Court noted that "[w]hen viewed in the proper context of the Christmas Holiday season . . . there is insufficient evidence to establish that the inclusion of the crèche is a purposeful or surreptitious effort to express some kind of subtle government advocacy of a particular religious message." *Id.* at 680.  It found that the crèche "is sponsored by the City to celebrate the Holiday and to depict the origins of that Holiday," which are "legitimate secular purposes." *Id.* at 681.

Second, the Supreme Court stated that the district court had erred in finding the primary effect of including the crèche was to confer a substantial and impermissible benefit on religion in general and on the Christian faith in particular. *Id.* at 681 Specifically, it found that "whatever benefit to one faith or religion or to all religions, [wa]s indirect, remote and incidental," elaborating that "display of the crèche [wa]s no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as 'Christ's Mass,' or the exhibition of

10

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

literally hundreds of religious paintings in governmentally supported museums." *Id.* at 683.

Third, the Supreme Court did not disturb the lower court's finding on the absence of administrative entanglement and reiterated that political divisiveness alone cannot serve to invalidate otherwise permissible conduct. *Id.* at 684.  It noted that public resources were "*de minimis*" given that the city owned the crèche and no expenditures for maintenance were necessary.  It found that "apart from this litigation there [wa]s no evidence of political friction or divisiveness over the crèche in the 40-year history of Pawtucket's Christmas celebration." *Id.*  And it stated that "[a] litigant cannot, by the very act of commencing a lawsuit, however, create the appearance of divisiveness and then exploit it as evidence of entanglement." *Id.* at 685.

Here, even when viewed under the *Lemon* test, the Kiosko Nativity Scene does not violate the Establishment Clause.  First, the crèche has a legitimate secular purpose. Viewing the crèche in the proper context of Las Posadas and the historic and cultural significance of that tradition for the Los Angeles community during the Christmas season, there is insufficient evidence to establish that the crèche is a purposeful or surreptitious effort to express some kind of subtle government advocacy of a particular religious message.  In fact, an article published on an official website of the City dispels any such notion, stating that "[w]hile the event is rooted in Christian and Catholic traditions, it is attended by people from all religious backgrounds and all are welcome to participate." El Pueblo de Los Angeles, *Las Posadas on Olvera Street*, https://elpueblo.lacity.gov/articles/las-posadas-olvera-street (last visited Mar. 11, 2026).  Second, like the crèche in *Lynch*, the primary effect of the crèche here is not to confer substantial and impermissible benefit on religion in general and on the Christian faith in particular.  And "whatever benefit to one faith or religion or to all religions, is indirect, remote and incidental" and "is no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as "Christ's Mass," or the exhibition of literally hundreds of religious paintings in governmentally supported museums." *Lynch*

11

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

465 U.S. at 683.  Third, there is no evidence of administrative entanglement or political divisiveness proffered by the Plaintiff.  Plaintiff provides no support concerning his bald allegation of use of public resources (which would be *de minimis* regardless).  Nor can he, by the very act of commencing a lawsuit, create the appearance of divisiveness to exploit it as evidence of entanglement.

As such, Plaintiff will not succeed on the merits in claiming that the Kiosko Nativity Scene violates the Establishment Clause.

### 2.    There Is No Threat of Imminent, Irreparable Harm.

Unreasonable delay in asserting a claim of irreparable injury may undercut a movant's claim of irreparable injury.  *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm"); *Garcia v. Google, Inc.* 786 F.3d 733, 746, (9th Cir. 2015) (holding that the district court did not abuse its discretion by denying the plaintiff's injunction request because the plaintiff had "waited months" to seek injunctive relief).

"[H]arm is irreparable if it cannot be adequately compensated or corrected at a later date by legal remedies or monetary damages." *Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Plaintiff cannot reasonably claim any imminent and irreparable harm.  Specifically, his delay in seeking a preliminary injunction militates against a finding of irreparable harm.  Both the Olvera Street Cross and the Kiosko Nativity Scene have been on display for many years.  Plaintiff attests to observing the crèche in 2024.  Pl.'s Mot., 9:6-9.  He also attests that he visits the park "regularly for recreation" and is "repeatedly exposed" to the "permanent" Olvera Street Cross, meaning he has undoubtedly seen the cross since 2024 at the latest.  Yet, he has waited until 2026 to bring this motion.  Without

12

explanation of what has changed, or when no compelling reason is apparent, courts are not required to issue preliminary injunctive relief to stop a practice that had continued unchallenged for a lengthy period of time. *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

As such, this factor weighs in favor of denying his request for injunctive relief.

### 3. The Balance of Equities and Public Interest Support Denying Injunctive Relief.

"Traditional standards for granting a preliminary injunction impose a duty on the court to balance the interests of all parties and weigh the damage to each, mindful of the moving party's burden to show the possibility of irreparable injury to itself and the probability of success on the merits." *L.A. Mem'l Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1204 (9th Cir. 1980). When the nonmovant is the government, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020)).

Here, the balance of equities and public interest support denying injunctive relief, as the Olvera Street Cross and Kiosko Nativity Scene are constitutional and do not violate the Establishment Clause. There would be no benefit to preventing their display. An injunction would practically mean removal and/or destruction of these historic and cultural displays. The removal of both will not appear neutral. As the *American Legion* court put it, "[a] government that roams the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine will strike many as aggressively hostile to religion." *American Legion*, 588 U.S. at 56. And "destroying or defacing [a monument] that has stood undisturbed for nearly a century would not be neutral and would not further the ideals of respect and tolerance embodied in the First Amendment." *Id.* at 66.

As such, the balance of equities and public interest weighs against Plaintiff's request for injunctive relief.

///

13

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

DATED:  March 16, 2026                 Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
EMERSON H. KIM, Deputy City Attorney

By:   */s/ Emerson H. Kim*
EMERSON H. KIM, Deputy City Attorney
Attorney for Defendant

14

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION