HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER Assistant City Attorney (SBN 229424)
EMERSON H. KIM, Deputy City Attorney (SBN 285142)
200 North Main Street, Room 675, City Hall East
Los Angeles, California 90012
Telephone No.: (213) 526-7336
Email: emerson.kim@lacity.org

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JACK GERRITSEN, et al.

Plaintiffs,

v.

CITY OF LOS ANGELES, et al.

Defendants.

No. 2:25-cv-08760-RGK-KS

**Hon. Karen L. Stevenson**
**United States Magistrate Judge**

Action filed: September 4, 2025

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................ 1

II. ARGUMENT ........................................................................ 2

A. There Is No Genuine Dispute as to Any Material Fact. ........................... 2

B. Establishment Clause Claim ........................................................ 3

1. Plaintiffs Proffer No New Evidence That Changes the Court's Reasoning in Its Order Denying Preliminary Injunction.........3

C. Free Speech Clause ........................................................ 6

1. *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993), Concerns Materially Different Facts................................6

2. El Pueblo's Policy Maintained a Valid Time, Place, and Manner Restriction, and Plaintiffs' Prior Restraint Argument Is Baseless........................................................8

3. Plaintiff Gerritsen Still Fails to Proffer Any Proof That His Free Speech Rights Were Violated in Any of the Three Incidents.....11

D. The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.........................................12

E. Even If the Court Were to Adjudicate Plaintiffs' State Law Claims, They Still Fail as a Matter of Law ................................................13

F. Defendant Lynch Should Be Dismissed............................................. 13

III. CONCLUSION ........................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acri v. Varian Assocs., Inc.*,
114 F.3d 999 (9th Cir. 1997) .......... 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 4

*Camenzind v. California Exposition and State Fair*,
84 F.4th 1102 (9th Cir. 2023) .......... 9, 10

*Carnegie–Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) .......... 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 4, 14

*Crane v. Allen*,
No. 3:09–cv–1303 HZ, 2012 WL 602432 (D. Or. Feb. 22, 2012) .......... 13

*Gerritsen v. City of Los Angeles*,
994 F.2d 570 (9th Cir. 1993) .......... passim

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
452 U.S. 640 (1981) .......... 10

*Keenan v. Allan*,
91 F.3d 1275 (9th Cir. 1996) .......... 4

*University of Texas v. Camenisch*,
451 U.S. 390 (1981) .......... 3

*Wallace v. Kato*,
549 U.S. 384 (2007) .......... 10

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .......... 9

Statutes

28 U.S.C. § 1367(c)(3) ..... 13

Cal. Civ. Proc. Code § 335.1 ..... 10

Other Authorities

Federal Evidence Rule 201(f) ..... 4

## I. INTRODUCTION

Defendants City of Los Angeles (the "City") and Domenika Lynch (together with the City, "Defendants") reiterate their request that summary judgment be entered in their favor. Plaintiffs Jack Gerritsen and Hank Ramey, Jr.'s (together as "Plaintiffs'") opposing papers do nothing to address the deficiencies in their case.

First, there is no genuine dispute as to any material fact here. Plaintiffs do not dispute 24 of the 26 facts that Defendants proffered. Of the remaining two, Plaintiffs do not appear to actually dispute the facts or underlying evidence. They do not identify what it is they dispute and do not controvert any of the facts by affidavit, declaration, or other written evidence. Plaintiffs also do not submit any new facts of their own.

Second, Plaintiffs proffer no new evidence that changes the Court's reasoning in its order denying preliminary injunction as to Plaintiffs' Establishment Clause claim. After fulsome discovery, Plaintiffs rely on the same evidence that the Court already reviewed and evaluated as inadequate support for their claim. Plaintiffs merely argue that Defendants failed to produce evidence negating or disproving every essential element, but that is not the standard. Plaintiffs must identify with reasonable particularity any evidence that precludes summary judgment, which they have not. Thus, Defendants are entitled to judgment as a matter of law.

Third, Plaintiffs' reliance on *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993) for his free speech claim is misguided. That case concerns materially different facts than the instant action. In *Gerritsen*, there was a *total* ban in place for parts of El Pueblo, a permitting scheme in others that was solely created to prevent Plaintiff Gerritsen from engaging in express activity, no free speech zone, and evidence of policy enforcement against him that resulted in the infringement of his free speech rights via altercations and detentions, among other manners. Here, no total ban was ever in place, the permitting scheme was based on significant government interests, Father Serra Park / Yaanga Park was open to all, and scant evidence of policy enforcement against him and any resulting injury exists.

Fourth, Plaintiffs' remaining claims are based on state law, over which the Court should decline to exercise supplemental jurisdiction. But even if the Court were to adjudicate these claims, they fail. The undisputed evidence shows that there was no violence, no threat of violence, no action premised on a protected characteristic under the Ralph Act or constitutional activity under the Bane Act, and no injury, physical or emotional, other than the cost of his stickers.

Lastly, to the extent that the Court does not grant complete summary judgment, the Court should, at minimum, dismiss Defendant Lynch from the action. Plaintiffs maintain no allegations or evidence against her in her official capacity.

As such, Defendants respectfully request that the Court grant their motion.

## II. ARGUMENT

### A. There Is No Genuine Dispute as to Any Material Fact.

As an initial matter, there is no genuine dispute as to any material fact. Plaintiffs' Statement of Genuine Issues for Trial in Opposition to the Motion for Summary Judgment ("Plaintiffs' Statement") establishes this. Defendants set forth 26 facts in their Statement of Uncontroverted Facts. ECF No. 28-1. Of the 26, Plaintiffs state "UNDISPUTED" for 24 of them. Plaintiffs state "DISPUTED" for two, SUF Nos. 10 and 19:

- SUF No. 10: "Mr. Gerritsen states that security guards have previously approached him due to vendor complaints, not because of expressive activity. Evidence: Kim Decl. Ex. 4 (Gerritsen Dep., 67:20-68:13)."
- SUF No. 19: "El Pueblo had a written policy concerning First Amendment activity during the three incidents that Mr. Gerritsen identifies. Evidence: Kim Decl. Ex. 5 (El Pueblo First Amended Policy)."

Pls.' Stmt., 3, 5. Although they state "DISPUTED," Plaintiffs do not identify what they dispute, failing to controvert these facts by affidavit, declaration, or other written evidence as required by the Court.[1] *See id.*; *see also* ECF No. 29 (Order Setting Briefing Schedule). Rather, they provide a legal argument contending that "Defendants' conduct is barred by

[1] For SUF No. 10, Defendants further address this point below in footnote 5 in Section II.C.3.

the 'law of the case' of *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993)." Defendants separately address this argument below under Section II.C.1.

As further clarification, and to remove any doubt, Defendants address the interrogatories Plaintiffs also cite to in their responses to SUF Nos. 10 and 19. Plaintiffs list their interrogatory responses as evidence of disputing SUF Nos. 10 and 19. They cite Plaintiff Gerritsen's response numbers 4, 5, and 6, and Plaintiff Ramey's response numbers 1 and 7.[2] However, the factual portions of those responses simply recite verbatim the allegations in their Verified Complaint, specifically Paragraphs 20, 23, 24, and 21. These same paragraphs are listed as SUF Nos. 7, 8, 9, 17. Plaintiffs have responded to those facts as "UNDISPUTED." Pls.' Stmt., 3-5. Thus, none of the facts are, in fact, disputed.

Plaintiffs do not submit any facts of their own. *See generally* Pls.' Stmt.

**B. Establishment Clause Claim**

**1. Plaintiffs Proffer No New Evidence That Changes the Court's Reasoning in Its Order Denying Preliminary Injunction.**

Plaintiffs' argument that the Establishment Clause Claim is not resolved by the preliminary injunction order misses the point. Defendants do not argue that the findings of fact and conclusions of law are binding at trial on the merits—they are not. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."). Defendants' argument is that, after fulsome discovery, Plaintiffs rely on the same evidence that the Court already reviewed and evaluated as inadequate support for their claim. *See* ECF No. 24 at 4-7. Thus, the Court should now rule that their claim fails as a matter of law.

Fundamentally, Plaintiffs misunderstand their burden at this stage. Where the non-moving party bears the burden of proof at trial, the moving party need not produce

[2] Plaintiffs' interrogatory responses are attached as Exhibits 1 and 2 to the Kim Declaration. ECF Nos. 28-3, 28-4.

evidence negating or disproving every essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, the moving party need only prove there is an *absence* of evidence to support the non-moving party's case. *Id.* The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If the non-moving party fails to make this showing, then "[t]he moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

Plaintiffs engage in precisely the same conduct describe above and fail to meet their burden. They argue that Defendants failed to produce evidence negating or disproving every essential element. *See, e.g.*,Opp'n 16:5-9 (attempting to rebut the presumption of constitutionality of the cross and crèche by arguing that Defendants fail to establish constitutionality via evidence: "Defendants have not offered a competent declaration from a historian, a City custodian, or General Manager. They offer Wikipedia, a commercial Olvera Street website, a Huntington [Library] catalog caption, and a marker database."). And they do not identify with reasonable particularity any evidence that precludes summary judgment. In fact, Plaintiffs do not proffer a single piece of new evidence. Specifically, for the Olvera Street Cross, Plaintiffs merely question the admissibility of the transcription and photograph evidence of the plaque near the cross, state that such evidence "is not conclusive," and then simply declare that its constitutionality "cannot be resolved against Plaintiffs on this record." *See* Opp'n 17:3-17. First, Plaintiffs arguably concede that their claim lacks support by failing to cite to any evidence. Second, the Court took judicial notice of the transcription and photograph evidence, meaning there is no question to admissibility under Federal Evidence Rule 201(f). ECF No. 24 at 4, n. 3 ( "The Court takes judicial notice of the transcription and photograph of a plaque located near the Olvera Street Cross . . . The accuracy of the transcription can be verified by photograph, rending its contents not subject to reasonable dispute."). The Court

determined that, based on this evidence, "the cross is likely 'established' and 'longstanding" thereby carrying "a presumption of constitutionality" that Plaintiff must rebut. *Id.* at 4-5. The Court concluded that "there is presently nothing in the record to rebut that presumption." *Id.* at 5. Plaintiffs still fail to rebut that presumption.

For the Kiosko Nativity Scene, Plaintiffs contend that there is insufficient evidence showing that the crèche was accompanied by sufficient secular symbols to conclude that it is constitutional in context. *See* Opp'n 16:20-26. ("Plaintiffs' evidence is that the Kiosko nativity scene stands in the central gazebo of a City park. Whether it is accompanied by secular symbols of comparable prominence is a fact Defendants have not established. A jury, or the Court after admissible evidence, must decide whether the display is the government's religious statement or a historical acknowledgement of Las Posadas."). But the Court already determined that "[s]imilar to the nativity scene in *Lynch*, the crèche fits within the broader tradition of recognizing Christmas a public holiday . . . [and] is displayed as a part of Las Posadas, a Christmas tradition that commemorates Mary and Joseph's search for shelter." ECF No. 24 at 6 (taking judicial notice of the City's official website regarding Las Posadas on Olvera Street). Put differently, the Court had sufficient evidence to determine that the crèche is unlikely to be found as violative of the Establishment Clause. Plaintiffs provide nothing new to change this. If anything, Defendants have provided further evidence to bolster its claim that the crèche is presumptively constitutional, as Plaintiff Gerritsen admitted to seeing it on display for "maybe 50 years," which supports Defendants' argument that the Kiosko Nativity Scene is an "established" and "longstanding" practice. SUF Nos. 5 (Gerritsen Dep., 22:24-23:4 (**Q:** Okay. So the first time you saw the nativity -- nativity scene was you're saying two or three months ago? A: Oh, no. I've seen it there years and years ago. It's been going on there for, you know, maybe 50 years. I don't know.")).

As such, Plaintiffs' Establishment Clause Claim fails, as they have not discharged their burden of identifying with reasonable particularly the evidence that precludes summary judgment, thereby entitling Defendants to judgment as a matter of law.

### C. Free Speech Clause

#### 1. *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993), Concerns Materially Different Facts.

Plaintiffs misunderstand the holding of the previous *Gerritsen* case and misstate that it is binding here as "law of the case" in the manner they represent. The facts are materially different despite what Plaintiffs may contend.

In *Gerritsen*, the Ninth Circuit reversed in part the district court's bench trial rulings, holding, in relevant part, that the City's then-ban on any handbill distribution in certain areas of El Pueblo and its permit scheme for handbill distribution in other areas of the park were not valid time, place, or manner restrictions. *Gerritsen*, 994 F.2d at 572.

The case concerns Plaintiff Gerritsen's activities between the mid-1980s to the early 1990s. At the time, the Mexican Consulate was located within El Pueblo. *See Gerritsen*, 994 F.2d at 572. Plaintiff Gerritsen distributed his literature and made speeches at El Pueblo because of "its many Mexican American and Mexican visitors," as he believed they would be "receptive to his message critical of policies of the Mexican government and the United States' relationship with Mexico." *Id.* at 573. Plaintiff Gerritsen "estimate[d] that between 1986 and 1991 . . . he visited the park 400 times and distributed more than 50,000 handbills in El Pueblo Park."[3] *Id.* During his visits to El Pueblo, Plaintiff Gerritsen had a number of incidents with security, administrators, police officers, and representatives of the Mexican Consulate, such as harassment, verbal and physical intimidation, detention, arrest, and physical assault. *Id.* In response to the earlier incidents, the City enacted expressive activity guidelines at El Pueblo and conceded that their creation was solely due to Plaintiff Gerritsen. *Id.* The guidelines contained two policies. First, the blue line policy prohibited *all* handbill distribution in certain areas of the park (indicated by blue demarcations), including the area around the Mexican

[3] Defendants note a significant discrepancy in Plaintiff Gerritsen's sworn deposition testimony in this matter, where he contends to have visited El Pueblo "approximately 50 days" since the 1980s. *See* SUF No. 3. If he visited El Pueblo more than 400 times between 1986 and 1991, his testimony here that he visited only 50 days since the 1980s is not credible.

Consulate and the Olvera Street merchants area. Second, for the other areas of the park, a permit scheme for limited handbill distribution was implemented. *Id.* Plaintiff Gerritsen had been subjected to these policies, and his First Amendment rights had been violated by way of permit denials, harassment, and detention while distributing handbills throughout the park. *See id.* at 573-574. Plaintiff Gerritsen stated that he would have distributed even more handbills had the policies not been in existence. *Id.* at 574. As a result, Plaintiff Gerritsen brought several lawsuits against numerous defendants. *Gerritsen*, 994 F.2d at 574. In the relevant lawsuits, the trial court found judgments in favor of the City, finding that the policies had not been enforced by the City against Plaintiff Gerritsen. *Id.* Thus, the trial court did not reach the merits of whether the City's policies were constitutional. *Id.*

On appeal, the Ninth Circuit determined that the policies had been applied and were unconstitutional. *Gerritsen*, 994 F.2d at 575. As to the first policy, the Ninth Circuit focused on the fact that it was a *total* ban. The City had provided three significant government interests for the ban: (1) preserving the historic quality of the Olvera Street area; (2) maintaining a calm, secure environment for the Consulate and its visitors; and (3) avoiding congestion in crowded areas. *Id.* at 577. The appellate court conceded that these interests were "substantial" but questioned the City's *manner* of achieving them, also noting that "courts have rarely upheld complete bans on a category of First Amendment expression." *Id.* ("We concede that these interests are substantial, but we question the City's manner of achieving them."). The court ultimately found the need for a complete ban unjustified, as the City could enforce other laws to curtail disruptive conduct. *Id.* As for the second policy, the appellate court homed in on a single reason: the City's sole purpose for creating the permitting requirment—Plaintiff Gerritsen. *See id.* at 578 ("Unfortunately, we are at a loss to discern any *significant* government interest in proposing the permit rule. The record reveals only one express reason for the City's enacting the permit scheme—to make it more difficult for Gerritsen to distribute handbills regarding his political beliefs." (Emphasis in original)). The court did not find that to be

a legitimate government interest. *Id.* ("We hold that this purpose is not a significant government interest. Moreover, it is not a legitimate government interest—it is precisely the type of viewpoint censorship which the Constitution seeks to prevent.").

Here, the facts are materially different. The written policy in effect at the time of the three incidents was not a total ban on distributing bills. It allowed such activity pursuant to a permit in certain areas. The City identified reasons for that permit policy, which had nothing to do with Plaintiff Gerritsen. Among several reasons, the policy was aimed to preserve El Pueblo's historic quality and protect public health and safety of the citizens by regulating traffic and preventing congestion on narrow walkways. *See* ECF Nos. 28-5, 7. The Ninth Circuit in *Gerritsen* conceded that "preserving [its] historic quality" and "avoiding congestion in these often crowded areas" were "substantial" government interests. *See Gerritsen*, 994 F.2d. at 577. Also, the policy here designated Father Serra Park / Yaanga Park as a free speech area where no permit was required. No free speech area existed in *Gerritsen*.

Furthermore, in the 1993 matter, Plaintiff Gerritsen provided evidence and testimony to support his claims. The Court found that the policy had been enforced against him on numerous occasions, resulting in verbal and physical harassment, verbal and physical intimidation, detention, arrest, and physical assault. The Court also acknowledged that that the policies thwarted Plaintiff Gerritsen from engaging in further expressive activities based on his statement that he would have distributed even more handbills had the permit policy not been in existence. But no such evidence or testimony (or even allegations) exist here. Ultimately, *Gerritsen* concerns materially different facts than what is before the Court today.

**2. El Pueblo's Policy Maintained a Valid Time, Place, and Manner Restriction, and Plaintiffs' Prior Restraint Argument Is Baseless.**

In deciding whether a restriction on First Amendment activities is constitutional, courts make three initial determinations: (1) whether the plaintiff's activities are protected speech or conduct; (2) whether the government restriction occurs in a public or non-public

forum; and (3) whether or not the restriction is a valid time, place, or manner restriction. *See Gerritsen*, 994 F.2d at 577. Given that there is no dispute as to the first two questions—passing out handbills or stickers is protected activity and the area at issue here is a public forum—the focus is on the third question. Whether a restriction is a valid time, place, or manner regulation, it must be content neutral, be narrowly tailored to serve a significant government interest, and leave open ample alternative channels for expression. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Plaintiffs raise three arguments, all of which fail. First, they contend that the written policy in this case is tantamount to the complete ban in the *Gerritsen* case, meaning the restriction is not narrowly tailored. Second, Father Serra Park / Yaanga Park is not an ample alternative, as Plaintiff Gerritsen would not have been able to reach his intended audience. Third, the denial of Plaintiff Gerritsen's and non-response to Plaintiff Ramey's permit applications are a prior restraint. They do not appear to dispute that the policy was content neutral.

Here, El Pueblo's policy was narrowly tailored to serve a significant governmental interest without burdening substantially more speech than necessary to achieve its goals. First, as stated above, the policy was nothing like the total ban in *Gerritsen*, which prohibited *all* handbill distribution at *all* times in certain areas. Second, the Ninth Circuit in both *Camenzind v. California Exposition and State Fair*, 84 F.4th 1102 (9th Cir. 2023) and *Gerritsen*, 994 F.2d 570, found the same government interests proffered here as satisfying the narrowly-tailored prong. *Camenzind*, 84 F.4th at 1114 ("The zones also serve a substantial government interest: public safety . . . The Free Speech Zones serve the 'substantial state interest' of preventing congestion in that area by 'confining distribution, selling, and fund solicitation activities to fixed locations."); *Gerritsen*, 994 F.2d at 577 ("The City advances three significant government interests . . . (1) preserving the historic quality of the Olvera Street area; (2) maintaining a calm secure environment for the Consulate and its visitors; (3) avoiding congestion in these often crowded areas. We concede that these interests are substantial . . . ."). Olvera Street is a tight walkway with

many shops tucked along the path. Yaanga Park (formerly known as Father Serra Park), on the other hand, is an open and spacious area. *See* SUF No. 17 (Permit Application—area marked as "FA Site" on map). Thus, the policy preserves and protects public health and safety of the citizens by regulating traffic and preventing congestion on narrow walkways without burdening more speech than necessary. Such clearly satisfies the narrowly tailored prong.

Furthermore, Father Serra Park / Yaanga Park was an ample alternative. The area is directly across the street from the Kiosko and similar in size, meaning it is a visible and central location that provides speakers with exposure. *See* SUF No. 17 (Permit Application—area marked as "FA Site"). Its proximity to the Kiosko and the main plaza area ensured that any demonstrations or free speech activities would have been seen and heard, meaning Plaintiff Gerritsen would have been able to effectively reach his intended audience. *See id*. Plaintiff Gerritsen essentially argues that such an area is less conducive to passing out handbills on Olvera Street, but that is the same unpersuasive argument that the plaintiff in *Camenzind* presented. *See Camenzind*, 84 F.4th at 1106 ("The officer told Camenzind that he could distribute the coins from the Free Expression Zones outside the entry gates. Camenzind declined, insisting that effective communication requires one-on-one conversations that he did not believe were possible from the designated zones."). Ultimately, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

Lastly, Plaintiffs' claim that the denial and nonresponse of their permit applications are a prior restraint fails. For Plaintiff Gerritsen, his claim is time barred. Section 1983 provides a federal cause of action, such claims are governed by the statute of limitations for personal-injury torts of the state in which the injury occurred. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Here, it is two years. *See* Cal. Civ. Proc. Code § 335.1 (establishing a two-year statute of limitations for personal injury actions). Plaintiff Gerritsen admits that his one and only permit application was denied on August 25, 2023. SUF No. 26.

The lawsuit was filed on September 9, 2025, more than two years later.

As for Plaintiff Ramey, there is an absence of proof that he intended to engage in any expressive activity by submitting an application or that he refrained from doing so.[4] He admits that he was not involved with any of the specific incidents. SUF No. 16. He does not allege that he actually intended to engage in any expressive activity or that he refrained from doing so when he did not receive a permit. SUF No. 17. In fact, the evidence shows the opposite. He testified that the only reason he had submitted an application was because Plaintiff Gerritsen had asked him to do so, not because he intended to engage in such activity or join Plaintiff Gerritsen. SUF No. 18. And Plaintiff Ramey did not sign his application, which likely explains why he never received a response. *See* ECF No. 28-5 (Ex. 3), 3. On page 3, the application specifically lists a series of stipulations, such as an agreement to comply with all applicable federal, state, and county regulations, and further states that "The application by his or her signature certifies that all the information given is complete and correct, and that no false or misleading information or false statements have been given." *Id.* Without confirming such, this shows that Plaintiff Ramey never intended to engage in expressive activity when he submitted his application or, at minimum, constitutes an incomplete application meaning he never formally applied. In either case, Plaintiff Ramey's prior restraint argument fails—and also establishes Defendants' argument that Plaintiff Ramey has no free speech claim.

**3. Plaintiff Gerritsen Still Fails to Proffer Any Proof That His Free Speech Rights Were Violated in Any of the Three Incidents.**

Plaintiffs argue that Defendants cannot treat the absence of the specific statement by security guards that Plaintiff Gerritsen was being stopped for engaging in expressive activity as a failure of proof. They misconstrue the point.

Defendants' argument is that it is Plaintiffs' burden to make a sufficient showing

[4] This argument also applies to Defendants' contention that Plaintiff Ramey does not have a free speech claim to assert.

on an essential element of his case, and they fail to do this even after adequate time for discovery. Apparently, the complete factual accounts of the September 12, 2023, February 22, 2025, and August 31, 2025, incidents are contained in three simple paragraphs, two of which are just a single sentence each. *See* SUF Nos. 7-9, 20-25. Plaintiff Gerritsen, in his own words, does not specify that he was stopped due to engaging in expressive activity or that anyone told him that he was being stopped due to violating El Pueblo's First Amendment Activity Policy. Even after being given several opportunities in the way of interrogatories and deposition, Plaintiff Gerritsen did not provide any further facts, including whether he actually stopped distributing his handbills and/or stickers after the encounters. *Id.* In other words, there is insufficient proof showing that El Pueblo's policy was ever applied against him or whether his constitutional rights were actually violated. In contrast, Plaintiff Gerritsen testified that security guards have approached him for reasons other than to enforce El Pueblo's expressive activity policy.[5] SUF No. 10. (Gerritsen Dep., 67:20-68:13 ("**Q:** Right. And then so then the security guards would come and tell you, 'Hey, some of the vendors are complaining about you,' right? **A:** I tell them -- if one of the security tells me that one of the vendors complains about me, I'll tell him, well I complain about a vendor too . . . Yeah those people – those people don't like me around them. I think that they resent the fact that I got rid of the Mexican Consulate."). The security guards may have spoken to him to address vendor complaints.

Without more, there can be no genuine issue as to any material fact, and Plaintiffs' complete failure of proof necessarily renders all other facts immaterial. Thus, Defendants are entitled to a judgment as a matter of law, as Plaintiffs have utterly failed to discharge their burden of proof.

### D. The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.

With the dismissal of Plaintiffs' First Amendment claims, only state law claims

[5] Plaintiffs dispute SUF No. 10, but they appear to contest only how Plaintiff Gerritsen's testimony could be interpreted. *See* Opp'n 14:2-6. However, there is no dispute as to the testimony itself.

remain. A district court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, when a district court dismisses all federal law claims before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *see also Crane v. Allen*, No. 3:09–cv–1303 HZ, 2012 WL 602432, at *10 (D. Or. Feb. 22, 2012) ("Having resolved all claims over which it had original jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

The factors of judicial economy, convenience, and fairness weigh in favor of the Court declining to exercise supplemental jurisdiction.

**E. Even If the Court Were to Adjudicate Plaintiffs' State Law Claims, They Still Fail as a Matter of Law.**

Plaintiffs' state law claims also lack any evidentiary support. Plaintiff Gerritsen testified in his deposition that there was no violence. SUF No. 11. He also conceded that no one threatened violence against him. SUF No. 12. Plaintiff Gerritsen did not provide any testimony or even specific allegations showing that the security guards' actions were premised on protected characteristics under the Ralph Act or even free speech activities (as previously discussed above) under the Bane Act. Plaintiff Gerritsen also testified that no injuries occurred. SUF Nos. 13, 14. The only injury he claims is the cost of his stickers and $500 to replenish them. SUF No. 15.

As such, both his state law claims fail as a matter of law.

**F. Defendant Lynch Should Be Dismissed.**

Defendants reiterate that, to the extent that the Court does not grant complete summary judgment, the Court should dismiss Defendant Lynch from this action. The Verified Complaint contains no allegations against her. And Plaintiffs have not proffered

any evidence against her or that any of El Pueblo's policies were enforced against them. *See Celotex*, 477 U.S. at 323, 325 (where the moving party need only prove there is an absence of evidence to support the non-moving party's case, and if the non-moving party fails to make this showing, then "[t]he moving party is entitled to a judgment as a matter of law.'").

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment or, in the alternative, grant partial summary judgment.

DATED: October 26, 2026

Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
EMERSON H. KIM, Deputy City Attorney

By: */s/ Emerson H. Kim*
EMERSON H. KIM, Deputy City Attorney
Attorney for Defendant

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,810 words, which complies with the word limit of L.R. 11-6.1

DATED: October 26, 2026 By: */s/ Emerson H. Kim*
EMERSON H. KIM